IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 23-CR-000145(JEB) |
| v. | : | |
| CHRISTOPHER MAURER | : | 18 U.S.C. § 111(a)(1) and (b) |
| Defendant. | : | |

### STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, CHRISTOPHER MAURER, with the concurrence of his attorney, agree and stipulate to the factual basis below for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd

encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.8 million dollars in losses.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Maurer's Participation in the January 6, 2021, Capitol Riot*

8.      On January 6, 2021, at approximately 2:59 p.m., the defendant, CHRISTOPHER MAURER ("Maurer") approached the entrance to the Lower West Terrace Tunnel ("the Tunnel"). The Tunnel provides direct access to the U.S. Capitol. On January 6, 2021, it was guarded by numerous police officers, including officers from the United States Capitol Police (USCP) and officers from the Metropolitan Police Department (MPD), who had responded to requests for assistance from USCP. Between 2:41 p.m. and approximately 5:00 p.m., the officers guarding the Tunnel were under siege by rioters attempting to forcibly enter the Capitol building. At times, rioters attempted to use their numbers and collective mass in an effort to push the officers back and break through the police line by engaging in coordinated rocking and pushing against the

police line. (At certain points, the rioters chanted "Heave ho!" while doing this.) MAURER entered the Tunnel and made his way to the front of the police line. MAURER confronted police officers that were preventing the Tunnel and the Capitol from being breached. Specifically, while inside the Tunnel, MAURER grabbed onto a police riot shield being used by one of the officers and tried to pull it away from the officer. MAURER also used his body and pushed against the officers in the Tunnel. MAURER exited the Tunnel after approximately 8 minutes.

9. MAURER then returned to the entrance to the Tunnel at approximately 3:50 p.m. when he added his force, momentum, body, and efforts to the other rioters in the "heave-ho" effort described above. This put intense aggregate pressure on the police line in front of the rioters.

10. At approximately, 3:51 p.m. MAURER used his hand to grab onto a cannister of chemical irritant, which was held by another rioter.

11. At approximately, 4:30 p.m. MAURER approached the Tunnel again, when he threw a stick-like object into the Tunnel at the line of police officers, including MPD officers. This stick-like object ricocheted off of the Tunnel wall and struck an MPD officer in the helmet. MAURER then used a cellphone cord that he whipped at the officers in the Tunnel.

12. MAURER knew at the time he entered the Lower West Terrace Tunnel to the U.S. Capitol building that he did not have permission to enter the building.

*Elements of the Offense*

13. The parties agree that assaulting, resisting, or impeding officers, in violation of Title 18, United States Code, Sections 111(a)(1) and (b) requires the following elements:

    a. The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with officers from the MPD or USCP;

    b. The defendant did such acts forcibly;

    c. The defendant did such acts voluntarily and intentionally;

d. The officer or officers who were assaulted, resisted, opposed, impeded, intimidated or interfered with were officers or employees of the United States who were then engaged in the performance of their official duties or assisting officers of the United States who were then engaged in the performance of their official duties; and

e. In doing such acts, the defendant intentionally used a deadly or dangerous weapon.

*Defendant's Acknowledgements*

14. MAURER knowingly and voluntarily admits all the elements of 18 U.S.C. § 111(a)(1) and (b). Specifically, MAURER admits that he assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the Metropolitan Police Department, and that he did such acts forcibly, voluntarily, and intentionally. Furthermore, the person or persons MAURER assaulted, resisted, opposed, impeded, intimidated, or interfered with was assisting officers of the United States who were then engaged in the performance of their official duties, and in doing such acts MAURER used a deadly or dangerous weapon – a stick-like object -- and used the weapon intentionally.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: */s/ Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney
IL Bar No. 6316768
601 D Street, N.W.
Washington, D.C. 20530
Kaitlin.klamann@usdoj.gov
(202) 252-6778

DEFENDANT'S ACKNOWLEDGMENT

I, CHRISTOPHER MAURER, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 7/18/24

_____
CHRISTOPHER MAURER
Defendant

ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 7/18/24

_____
Marc Jason Eisenstein
Attorney for Defendant